**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | 4:26-md-03176-ALM<br>MDL 3176 |
| ABC IP, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>80MILLS LLC, d/b/a TACTICAL TITAN SUPPLY, *et al.*,<br><br>Defendants. | Civil Action No. 4:26-cv-00380-ALM |
| ABC IP, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DNT LLC, d/b/a DEEZ NUTZ TACTICAL, *et al.*,<br><br>Defendants. | Civil Action No. 4:26-cv-00377-ALM |
| ABC IP, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HANES TACTICAL LLC, *et al.*,<br><br>Defendants. | Civil Action No. 4:26-cv-00369-ALM |

| | |
|---|---|
| ABC IP, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HARRISON GUNWORKS LLC, *et al.*,<br><br>Defendants. | Civil Action No. 4:26-cv-00379-ALM |
| ABC IP, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN THANH NGUYEN, d/b/a POLYMER PEW,<br><br>Defendant. | Civil Action No. 4:26-cv-00425-ALM |
| ABC IP, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Z3 PRODUCTIONS LLC d/b/a Z3PRO,<br><br>Defendant. | Civil Action No. 4:26-cv-00367-ALM |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' OPPOSITIONS TO**
**PLAINTIFFS' CONSOLIDATED MOTION FOR PRELIMINARY INJUNCTION**

# INTRODUCTION

Plaintiffs ask this Court to award a five-patent preliminary injunction ("PI") against six small-business defendant groups[1] in the one way such relief can never properly be awarded: by default. Their motion would strike 28 pages of merits briefing and eight sworn declarations — including rebuttal expert analysis and third-party testimony bearing on the inventorship of an asserted patent — so that a request for "extraordinary" relief, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), may be granted without ever being tested. The motion should be denied, for several independent reasons.

***First***, its premise is false. Plaintiffs proceed as though Defendants ignored the June 12 response date and never sought relief from it. Strike Mot. at 1–3. In fact, three days *before* that date, Defendants moved for a scheduling order that expressly invoked Rule 6(b)(1)(A) and Local Rule CV-7(e) — the very provisions that authorize enlarging a response period — and told the Court the default 14-day window was "unworkable" for a record spanning five patents, 34 claims, 13 defendant groups, and more than 1,200 pages. Dkt. #51 at 5–6. That motion has been fully briefed since June and remains pending. Because the request was made before the deadline expired, Rule 6(b)(1)(A)'s good-cause standard governs, and the Court retains full authority to grant relief now. Plaintiffs' excusable-neglect framework — the entire scaffolding of their motion — applies only where a party asks for nothing until after the time has run. Defendants asked first.

***Second***, Plaintiffs already faced this exact posture in this MDL — and took the *opposite*

[1]The "Defendants" submitting this opposition are 80Mills LLC d/b/a Tactical Titan Supply, Pearson Gardner; DNT LLC d/b/a Deez Nutz Tactical, Zach Morrow; Hanes Tactical LLC, Damion Terrell Bennett; Harrison Gunworks LLC, Tyler Harrison; Steven Thanh Nguyen d/b/a Polymer Pew; and Z3 Productions LLC d/b/a Z3Pro. Consistent with Plaintiffs' motion, docket citations are to *ABC IP, LLC v. 80Mills LLC*, No. 4:26-cv-00380-ALM (E.D. Tex.), unless otherwise indicated; "Strike Mot." refers to Plaintiffs' Motion to Strike [Dkt. #71]; and "*AS Designs* Dkt." refers to the docket in *ABC IP, LLC v. AS Designs, LLC*, No. 4:26-cv-00370-ALM (E.D. Tex.), a companion case in this MDL.

position. In the companion *AS Designs* case, the same defense counsel filed the same scheduling motion invoking the same rules; the same default deadline passed while it pended; and no PI opposition was on file for weeks. Plaintiffs moved to strike nothing. Instead — weeks after urging this Court to deem that PI motion "unopposed and ripe for ruling," *AS Designs* Dkt. #47 — they withdrew their opposition and agreed to a schedule giving three defendants 91 days to oppose a four-patent motion. *See AS Designs* Dkt. #55, 56. Defendants here filed in 81 days — beating, on a broader motion, the timetable Plaintiffs endorsed for a narrower one.

***Third***, the irony is complete. Plaintiffs condemn any deadline tied to a future Court ruling as an impermissible "open-ended" delay — and then close their motion by requesting exactly that for themselves: a reply due "14 days from the date of the Court's order." Strike Mot. at 6.

***Fourth***, striking would accomplish nothing legitimate. An injunction cannot issue by default; Plaintiffs would still bear the full *Winter* burden on an empty record, inviting reversal. The only thing this motion can achieve is what it was designed to achieve: to spare Plaintiffs — now on their fifth PI application in this campaign — from answering the merits. The Court should deny the Strike Motion, grant the pending scheduling motion, and decide the PI Motion on a complete adversarial record.

## I. BACKGROUND

The relevant chronology comparing Defendants' cases with *AS Designs* is as follows:

| **Date (2026)** | **Event – *AS Designs*** |
|---|---|
| Apr. 27 | Plaintiffs move for a PI against AS Designs (4 patents). *AS Designs* Dkt. #28. |
| May 6 | The AS Designs defendants move for a scheduling order invoking L.R. CV-7(e) and Rule 6(b)(1)(A), proposing a July 27 opposition date. *AS Designs* Dkt. #33. |
| May 11 | The default response date passes in *AS Designs* while that scheduling motion pends. Plaintiffs oppose the scheduling motion (*AS Designs* Dkt. #34) but do not move to strike anything. |

| | |
|---|---|
| July 2 | Plaintiffs file a "Notice of Non-Opposition and Ripeness," urging the Court to deem the PI Motion "unopposed and ripe for ruling" — without mentioning the pending scheduling motion. *AS Designs* Dkt. #47. |
| July 9 | The *AS Designs* defendants file their PI Opposition – 73 days after the PI Motion and before the proposed July 27 deadline. Dkt. #50. |
| July 16 | Plaintiffs withdraw their *AS Designs* scheduling motion opposition and consent to the proposed schedule. *AS Designs* Dkt. #55. |
| July 17 | The Court enters the proposed *AS Designs* schedule: opposition July 27; reply Aug. 6; sur-reply Aug. 17. *AS Designs* Dkt. #56. |

| **Date (2026)** | **Event - Defendants** |
|---|---|
| May 29 | Plaintiffs file the consolidated PI Motion against 13 defendant groups (including Defendants) — 5 patents, 34 claims, 1,200+ pages. Dkt. #43. |
| June 9 | Defendants move for a scheduling order invoking Rule 6(b)(1)(A) and L.R. CV-7(e). Dkt. #51. The default response date for the PI motion passes on June 12 while that scheduling motion pends. |
| June 23 | Plaintiffs oppose the scheduling motion. Dkt. #57 at 11–12. |
| July 2 | Plaintiffs file a "Notice of Non-Opposition and Ripeness," urging the Court to deem the PI Motion "unopposed and ripe for ruling" — without mentioning the pending scheduling motion. Dkt. #59. The same day, they file their fifth PI application: a Second Consolidated PI Motion against eleven more defendant groups, including Defendant DNT. *See* No. 4:26-cv-00377, Dkt. #62. |
| Aug. 18 | Defendants file their PI Opposition — 81 days after the PI Motion. Dkt. #67. |
| Aug. 20 | Plaintiffs move to strike. Dkt. #71. |

The consolidated PI Motion is the largest injunction filing in this MDL: a 53-page brief asserting five patents and 34 claims against 13 separately situated defendant groups and at least five accused products, supported by more than 1,200 pages of declarations and claim charts. *See* Dkt. #51 at 3–4. Defendants' scheduling motion asked the Court to replace the default 14-day response period — which it described as "unworkable," *id.* at 6 — with a Court-ordered schedule, expressly disclaiming any indefinite delay. Plaintiffs' response conceded the premise: "[t]he ordinary remedy for a large record is more time to respond," and Plaintiffs "do not oppose a bounded extension to Defendants' time to respond to the P.I. Motion." Dkt. #57 at 9, 12. The

dispute was never whether June 12 would hold — no one believed it would — but only how its replacement would be set.

Even though that scheduling motion was still pending, Plaintiffs filed, on July 2, a "Notice of Non-Opposition and Ripeness," urging the Court to treat the PI Motion as "unopposed and ripe for ruling" — a notice that nowhere acknowledged the pending, fully briefed motion directed at that very deadline. Dkt. #59. The same day, Plaintiffs filed their fifth application for preliminary relief in this campaign: a Second Consolidated Motion for Preliminary Injunction against eleven more defendant groups — including Defendant DNT — re-asserting against Peak Tactical the same accused product on which the District of Wyoming had already denied an injunction. No. 4:26-cv-00698, Dkt. #82; *see id.* at 19. And two weeks after declaring the default here "ripe," Plaintiffs consented in *AS Designs* to replacing the same default deadline with a July 27 opposition date that is 91 days after the corresponding PI motion was filed. *AS Designs* Dkt. #55, 56.

Defendants, meanwhile, completed their consolidated Opposition to the PI Motion within the comparable 91-day timetable that Plaintiffs themselves agreed to in *AS Designs*. *See* Dkt. #67. The Opposition spans 28 pages and is supported by 10 declarations, including the rebuttal expert declaration of Eric J. Phillips and third-party testimony of Timothy S. Hoffman bearing on inventorship of an asserted patent. Dkts. #68-#70. Two days later, Plaintiffs moved to strike them.

## II. ARGUMENT AND AUTHORITIES

### A. Defendants Requested Relief Before the Deadline Expired; Rule 6(b)(1)(A)'s Good-Cause Standard — Not Excusable Neglect — Governs.

Rule 6(b)(1) draws a temporal line: a court "may, for good cause, extend the time . . . with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires." Fed. R. Civ. P. 6(b)(1)(A). Only when the request comes "after the time has expired" must the movant additionally show excusable neglect. Fed. R. Civ. P. 6(b)(1)(B). As

explained by the Fifth Circuit, where an extension is sought "prior to the expiration of the time limit at issue, a court may extend the period *for any reason*." *L.A. Pub. Ins. Adjusters, Inc. v. Nelson*, 17 F.4th 521, 524 (5th Cir. 2021) (citing Rule 6(b)(1)(A)). That good-cause standard is "far more lenient" than the diligence Rule 16 demands, *Devillier v. Texas*, No. 3:20-CV-00223, 2023 WL 2744398, at *2 (S.D. Tex. Mar. 31, 2023), and it turns on when the request is *filed*, *see Garcia v. LQ Props., Inc.*, No. 3:16-CV-1646-L, 2018 WL 276329, at *2 (N.D. Tex. Jan. 3, 2018), not on when the court rules. District courts hold "broad discretion to expand filing deadlines" under Rule 6(b). *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995).

Defendants made a timely request. Three days before the deadline, they filed a motion invoking — by rule number — the two provisions that authorize enlargement of a response period: "Rule 6(b)(1)(A) permits the Court, for good cause, to extend time in response to a request made before the original time expires. Local Rule CV-7(e) likewise permits a party to move for an order lengthening or shortening the response period for a motion." Dkt. #51 at 5. The motion identified the deadline at issue, explained why it was "unworkable," *id.* at 6, and asked the Court to supersede it with a Court-set schedule. A timely motion asking the Court to displace the default response deadline and order a different one *is* a request to extend that deadline. Plaintiffs' contrary theory — that Defendants forfeited Rule 6(b)(1)(A) by styling their request "scheduling order" rather than "extension of time" — finds no support in the Rule's text and would reduce federal practice to a game of magic words. Plaintiffs understood the motion perfectly well: they answered it with twelve pages addressed to the response deadline, a two-week extension offer, and the express concession that "more time to respond" was the "ordinary remedy." Dkt. #57 at 9. No one — least of all Plaintiffs — read Dkt. #51 to mean Defendants would respond by June 12 regardless.

Plaintiffs concede that "Rule 6(b)(1)(A) preserves the Court's authority to act on a timely

request." Strike Mot. at 2–3. That authority did not lapse when June 12 passed; a timely request may be granted after the period expires, and relief remains measured by good cause alone. *See Nelson*, 17 F.4th at 524. Defendants claim nothing more. They do not contend that filing the motion "suffices to meet the deadline" or that it worked an "automatic stay." Dkt. #71 at 4 (citing *Hardaway v. Davis*, 684 F. App'x 444, 448 (5th Cir. 2017); *Rashid v. Delta State Univ.*, 306 F.R.D. 530, 535 (N.D. Miss. 2015)). The Court retains the power those very cases acknowledge — the power to grant a timely request — and should exercise it rather than allow Plaintiffs to convert the Court's undecided docket into a forfeiture. *See Willis v. Aron*, No. 4:23-cv-732-ALM-KPJ, 2024 WL 778384, at *2 (E.D. Tex. Feb. 26, 2024) (timely requests for extensions of time normally will be granted absent bad faith or undue prejudice); *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010) (same); *Lizarazo v. Miami-Dade Corr. & Rehab. Dep't*, 878 F.3d 1008, 1012 (11th Cir. 2017) (timely Rule 6(b)(1)(A) motions should be liberally granted) (citing *United States v. Miller Bros. Constr. Co.*, 505 F.2d 1031, 1035 (10th Cir. 1974)).

Finally, good cause is not contestable, because Plaintiffs conceded it. They told this Court that a large record warrants "more time to respond" and that they "do not oppose" an extension, Dkt. #57 at 9, 12 — and in *AS Designs* they agreed that 91 days was an appropriate response period for a smaller motion. *AS Designs* Dkt. #55, 56. A party that admits the deadline had to move cannot cry foul that it moved.

### B. Plaintiffs Accepted This Exact Posture in *AS Designs* — Then Agreed to a Longer Schedule Than Defendants Followed Here.

Plaintiffs' Strike Motion cannot be reconciled with their own conduct in the member case next door. The two scheduling motions — filed by the same defense counsel, five weeks apart — are materially identical in authority, premise, and relief; the procedural postures they created are identical; only Plaintiffs' responses differ:

| | ***AS Designs*** **(No. 4:26-cv-00370)** | **This Case (Consolidated)** |
|---|---|---|
| **Underlying PI motion** | Four patents, two accused products, three defendants. *AS Designs* Dkt. #28. | Five patents, 34 asserted claims, five accused products, thirteen defendant groups, 1,200+ pages. Dkt. #43; *See* Dkt. #51 at 3–4. |
| **Scheduling motion filed** | Five days before the default response date. *AS Designs* Dkt. #33. | Three days before the default response date. Dkt. #51. |
| **Authority invoked** | Fed. R. Civ. P. 16, 6(b)(1)(A); L.R. CV-7(e). *AS Designs* Dkt. #33 at 5. | Fed. R. Civ. P. 16, 6(b)(1)(A); L.R. CV-7(e). Dkt. #51 at 5. |
| **Core premise** | Default 14-day response period "unworkable" for the PI record. *AS Designs* Dkt. #33 at 5–6. | Default 14-day response period "unworkable" for the PI record. Dkt. #51 at 5–6. |
| **Relief sought** | Court-set PI briefing schedule: opposition July 27; reply Aug. 6; sur-reply Aug. 17. *AS Designs* Dkt. #33 at 1, 12. | Court-set PI briefing schedule: agreed or competing proposals due by a date certain. Dkt. #51 at 8. |
| **Default PI opp'n date passes while scheduling motion pends** | May 11. | June 12. |
| **Plaintiffs' initial response to scheduling motion** | Opposed. *AS Designs* Dkt. #34. | Opposed. Dkt. #57. |
| **Plaintiffs' final position re: scheduling motion** | Withdrew opposition; consented to the schedule, which the Court entered. *AS Designs* Dkt. #55, 56. | Moved to strike Defendants' PI Opposition. Dkt. #71. |

Measured by the yardstick Plaintiffs endorsed, Defendants were early. The consolidated PI Motion — one more patent, more asserted claims, more accused products, ten more defendant groups, and hundreds more pages than *AS Designs* — was filed May 29; Defendants opposed 81 days later, 10 days faster than the pace Plaintiffs agreed was appropriate for the narrower motion. That is not a party "seeking to set his own deadlines," *McCarty v. Thaler*, 376 F. App'x 442, 444 (5th Cir. 2010); it is a party conforming itself to a similar PI schedule this Court has entered in this MDL — a schedule bearing Plaintiffs' signature and approval. *See AS Designs* Dkt. #55, #56.

Having procured the Court's adoption of that schedule, Plaintiffs may not assert its

opposite here. A party is estopped from taking a position "plainly inconsistent" with one a court previously accepted at its urging. *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001); *Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 553 (5th Cir. 2014). Judicial acceptance does not require a final judgment; adoption requires only "that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004). The *AS Designs* order is that acceptance: Plaintiffs told the Court there that a 91-day, Court-managed response schedule should apply, the Court so ordered, and Plaintiffs now tell this Court that a materially *shorter* response on a materially *larger* motion is sanctionable. Whether the label is judicial estoppel or simple fairness, the result is the same: Plaintiffs' own stipulation conclusively refutes the only interests their motion invokes. If 91 days worked no prejudice on four patents, 81 days worked none on five.

The inconsistencies do not stop there. Plaintiffs condemn deadlines running from a future ruling of the Court as "open-ended" and set to no timetable, Dkt. #57 at 11–12; Strike Mot. at 4 — then close this motion by asking for precisely such a deadline for themselves: a reply due "14 days from the date of the Court's order." Strike Mot. at 6. Defendants do not begrudge the request. But a practice cannot be routine when Plaintiffs invoke it and abusive when Defendants do. And it was Plaintiffs who warned this Court that fragmented treatment of their injunction campaign "would reintroduce the risk of inconsistent injunction rulings across member actions." Dkt. #57 at 10. Striking these six defendant groups' PI Opposition while AS Designs litigates the same patents on a full adversarial record would manufacture exactly that inconsistency: merits scrutiny for one member case, default for six others.

Nor can Plaintiffs retreat to the distinctions their motion gestures at. *First*, the observation that Defendants' scheduling motion proposed a process rather than particular dates proves too

much: when the *AS Designs* defendants did propose exact dates, Plaintiffs opposed those too — for eleven weeks — before consenting to them. The objection was never the absence of a calendar; it was the existence of any calendar Plaintiffs did not dictate. *Second*, Rule 6(b)(1)(A) and Local Rule CV-7(e) require a timely request, not a proposed schedule, and Defendants' alternative request (Part III, below) asks the Court to exercise precisely the authority the timely motion preserved. *Third*, that certain other defendants accepted two-week extensions and filed in June, Strike Mot. at 3, establishes only what two weeks could accommodate for those defendants and their records. For six coordinated Defendant groups answering a multi-product, five-patent, 1,200-page record, the only Court-approved measure of a reasonable response period — the one Plaintiffs signed — was 91 days. Defendants beat it.

### C. **Striking Is a Drastic, Disfavored Remedy Requiring Prejudice Plaintiffs Cannot Show — and Every Case They Cite Involved a Party Who Asked the Court for Nothing.**

As a threshold matter, no rule authorizes the relief Plaintiffs seek. Rule 12(f) permits a court to strike matter only from a "pleading," and Rule 7(a)'s exclusive list of pleadings does not include response briefs or supporting declarations. *Caliber Home Loans, Inc. v. Cove*, 346 F.R.D. 65, 70 (N.D. Tex. 2024) (Rule 12(f) "only applies to pleadings" as defined by Rule 7(a)). What Plaintiffs actually invoke is the Court's inherent power — authority that "must be exercised with restraint and discretion," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), whose "threshold" is "high," and which requires a specific finding that the sanctioned party acted in bad faith. *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995); *Maguire Oil Co. v. City of Houston*, 143 F.3d 205, 209 (5th Cir. 1998). Plaintiffs' motion does not acknowledge that standard, much less attempt to satisfy it.

This district's precedent answers the Strike Motion. Where the court "has not yet

considered" the underlying motion, it retains discretion to consider a response filed after the default deadline, and the response will not be stricken where the movant has not "allege[d] or prove[d] that it would suffer prejudice." *Guilbeaux v. 3927 Found., Inc.*, 177 F.R.D. 387, 389-90 (E.D. Tex. 1998). Motions to strike are "generally disfavored," *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982) — "drastic remedies" that are "infrequently granted," *U.S. ex rel. King v. Solvay S.A.*, 304 F.R.D. 507, 509 (S.D. Tex. 2015). The Fifth Circuit has instructed that striking "should be sparingly used by the courts" and "granted only when the [matter] to be stricken has no possible relation to the controversy." *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012). And procedural defaults "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000); *see also In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014) (the Fifth Circuit favors "resolving cases on their merits").

Every element of the *Guilbeaux* posture is present. The Court has not ruled on the PI Motion or set a hearing. Plaintiffs hold Defendants' consolidated PI Opposition in hand and ask only for reply time — which Defendants do not oppose. And the "prejudice" Plaintiffs assert reduces to the passage of time they themselves accepted at every turn: months from suit to each PI motion; a two-week extension offer they knew could not absorb a 1,200-page record; and a stipulated 91-day schedule in the companion *AS Designs* case. In the ten weeks the fully briefed scheduling motion sat undecided, Plaintiffs never once prompted the Court to rule on it. They tried instead to litigate around it — filing a July 2 "Notice" urging the Court to deem the PI Motion "unopposed and ripe" without ever mentioning the pending motion aimed at that very deadline, Dkt. #59 — and then, 14 days later, consenting in *AS Designs* to an 11-week enlargement of the

identical deadline. Plaintiffs' own filings then gave the game away: one week after declaring the PI Motion "unopposed and ripe," Plaintiffs told this Court — in their Second Consolidated Motion — that "[b]riefing related to Rare Breed's First Consolidated Motion for PI and accompanying Motion for Expedited Discovery is ongoing." No. 4:26-cv-00698, Dkt. #82 at 19. A motion cannot be closed for purposes of ripeness and open for every other purpose. Parties genuinely suffering harm that "accrues sale by sale," Strike Mot. at 5, do not litigate this way. Being made to answer a response is not the kind of prejudice that warrants striking one; it is "an undifferentiated type of prejudice that would arise in every case in which the court considers a tardy response." *Hill v. Optum*, No. 3:17-CV-0775-D, 2017 WL 2378299, at *2 (N.D. Tex. June 1, 2017); *see Forster v. Bexar Cnty.*, No. 5:21-CV-00765-JKP-RBF, 2022 WL 2820857, at *8 (W.D. Tex. July 19, 2022) (declining to strike untimely responses, absent prejudice or bad faith, in favor of deciding the motions on their merits). The record does not show a movant suffering prejudice; it shows a movant that preferred the deadline dead: better six defaults than six oppositions.

Plaintiffs' authorities prove the point. In every strike case they cite, the late party asked the court for nothing before time ran. *Rashid* rested on a private agreement between counsel, never presented to the court. 306 F.R.D. at 532–35. *Thompson* and *Garcia* involved late responses unaccompanied by any motion at all. *Thompson v. Beasley*, 309 F.R.D. 236, 244 (N.D. Miss. 2015); *Garcia v. City of McAllen*, 2020 WL 4934582, at *4 (S.D. Tex. Aug. 24, 2020). *McCarty* and *Hardaway* involved habeas petitioners claiming or seeking extensions after expiration. Not one involved what this record shows: a timely, fully briefed motion invoking Rule 6(b)(1)(A) that the court had not yet decided. If anything, those cases describe the rule Defendants followed — take the deadline to the Court before it runs. *United States v. Locke* is further afield still: it enforced a jurisdictional statutory deadline for which Congress supplied no safety valve. 471 U.S. 84, 100–

01 (1985). Rule 6(b) *is* the safety valve.

The relief demanded confirms the overreach. Plaintiffs would strike not merely briefs but eight sworn declarations, Strike Mot. at 2 n.2, including expert economic rebuttal and third-party testimony on the inventorship of an asserted patent — evidence at the center of the validity and irreparable-harm inquiries this Court must ultimately make. Striking evidence is among the severest sanctions in federal practice, reserved for bad faith and willful misconduct, and then only where lesser measures will not do. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012); *Gatson v. Wilshire Com. Capital LLC*, 344 F.R.D. 372, 379 (E.D. Tex. 2023); *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 482-83 (N.D. Tex. 2016) (courts must impose the least severe sanction adequate to the purpose). Plaintiffs do not allege bad faith, because they cannot: Defendants announced their course in a public motion, briefed it, and executed it on the timetable Plaintiffs endorsed next door.

### D. In the Alternative, the PI Opposition Should Be Accepted Under Rule 6(b)(1)(B), Because Every Pioneer Factor Favors Defendants.

If the Court concludes a further request is required, Defendants make it here and now: accept the August 18 consolidated PI Opposition and deem it timely. Excusable neglect is "at bottom an equitable" determination made on "all relevant circumstances." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *Halicki v. La. Casino Cruises, Inc.*, 151 F.3d 465, 468–69 (5th Cir. 1998) (discussing *Pioneer*); *see In re CJ Holding Co.*, 27 F.4th 1105, 1114 (5th Cir. 2022) (no single factor predominates); *Spend Life Wisely Co. v. Phillips*, 700 F. Supp. 3d 510, 518 (E.D. Tex. 2023). *Pioneer* itself affirmed a finding of excusable neglect for a filing made 20 days late, where prejudice, delay, and good faith all pointed the movant's way. 507 U.S. at 398–99.

Here, all four *Pioneer* factors point one way. *Prejudice*: none. The Court has neither ruled

nor set a hearing; Plaintiffs stipulated to a longer, later-running schedule in *AS Designs*; and their only concrete request — reply time — is unopposed. *Length of delay and impact*: measured against the benchmark Plaintiffs endorsed, ten days early; measured against the docket, nil, because nothing awaited the PI Opposition. *Reason*: Defendants filed a timely Rule 6(b)(1)(A) motion, briefed it fully, and then reasonably conformed to the other comparable PI schedule entered in this MDL — one Plaintiffs signed — while the same defense team completed parallel *AS Designs* PI motion briefing, addressed a Second Consolidated PI Motion for one of the Defendants, while coordinating six client groups, their declarants, and rebuttal experts across a 1,200-page record for the PI Motion at issue. *Good faith*: Defendants announced every step in advance, on the public docket, and filed a substantive, evidence-backed opposition — the opposite of evasion. Reliance on a pending motion and a parallel Court-ordered schedule bears no resemblance to the unexplained inaction in Plaintiffs' cases, and *Pioneer* teaches that even genuine miscalculations are excused when the equities align. 507 U.S. at 388, 395.

### E. <u>Striking Would Not Advance the PI Motion by a Single Day; It Would Only Insulate It from Scrutiny.</u>

Finally, the Strike Motion fails because it accomplishes nothing legitimate. A PI is "an extraordinary remedy never awarded as of right," *Winter*, 555 U.S. at 24, and it cannot issue by default. An injunction granted without a fair opportunity to oppose it must be vacated. *Harris County, Tex. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 326 (5th Cir. 1999). A movant must "clearly carr[y] his burden of persuasion on all four factors"; the relief remains "the exception rather than the rule." *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 681 (N.D. Tex. 2015); *see eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–94 (2006). Local Rule CV-7(d)'s unopposed-motion presumption cannot supply the defendant-specific proof of infringement, validity, causal-nexus irreparable harm, and equity that *Winter* and *eBay* demand before six

businesses are enjoined. That is settled law in this Circuit: a motion may not be granted "simply because there is no opposition" — "even if the failure to oppose it violates a local rule" — because the movant must still discharge its own burden. *Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*, 404 F. Supp. 2d 942, 947 (S.D. Tex. 2005) (in context of summary judgment motion); *John v. Louisiana (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 708–09 (5th Cir. 1985); *see also Ramirez v. United States*, 410 F. Supp. 3d 824, 830 n.1 (S.D. Tex. 2019) (a court "may not simply grant a motion to dismiss as unopposed; it must consider the merits"). If that is true of ordinary motions, it is doubly true of a request for equity's most extraordinary remedy. Striking the consolidated PI Opposition therefore would not hasten a ruling by a day. It would guarantee that any ruling issues on a one-sided record, invite precisely the appellate vulnerability *CarMax* describes, and blind the Court to sworn evidence — including third-party inventorship testimony going to the validity of an asserted patent — on issues at the heart of this MDL.

That, of course, is Plaintiffs' object. By their own count, Plaintiffs have now made five applications for PI relief across a campaign of more than eighty infringement suits. No. 4:26-cv-00698, Dkt. #82 at 19. After the District of Wyoming denied their injunction against Peak Tactical, Plaintiffs procured a newly issued patent and — on the same day they declared this PI Motion "ripe" by default — served a second consolidated PI motion re-targeting the same accused product while that denial sits on appeal. *Id.*; No. 26-1527 (Fed. Cir.). Defendant DNT now faces two simultaneous PI motions in this MDL. Plaintiffs defend the *months* of self-selected delay preceding each of these "urgent" filings as reasonable, No. 4:26-cv-00698, Dkt. #82 at 25 n.6; *see High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995), while branding Defendants' Court-supervised 81-day response sanctionable. A movant confident in its five-patent record does not need the other side's evidence stricken in order to prevail on it. The

transparent aim of this motion is to capture through Local Rule CV-7(d) what Plaintiffs are unwilling to earn under Rule 65 — an injunction won on procedure rather than proof. The Court should decline the invitation.

### F. Plaintiffs' Reply in Support of Their Consolidated PI Motion Is Overdue.

Defendants' consolidated PI Opposition was filed August 18, which means Plaintiffs' supporting Reply, which was due August 25, is now overdue. *See* L.R. CV-7(f).[2] Plaintiffs' complaint, that they should not have to reply to the PI Opposition before the Court accepts it, is the same as Defendants' objection to responding to the PI Motion on patents that are not even in the case (since Plaintiffs' opposed motions to amend the complaints (Dkt. #38) have not been granted). *See* Dkt. #49. But when Defendants made that objection, Plaintiffs insisted that urgency requires that Defendants respond to the PI Motion anyway and let the Court sort it all out later. No. 4:26-cv-00521, Dkt. #71 at 1-2, 12. So to be consistent with that approach, Plaintiffs should file any reply to Defendants' PI Opposition within 10 days of today (the same time between the PI opposition and reply in *AS Designs* Dkt. #56). Refusing to file by a date certain would extend the PI proceedings and show that Plaintiffs' claims of urgency and irreparable harm are not genuine.

## CONCLUSION

For the above-discussed reasons, Defendants respectfully request that the Court: (1) deny the Strike Motion; (2) accept the August 18 consolidated PI Opposition as timely (which may be through grant of Defendants' pending Motion for Scheduling Order (Dkt. #51)); and (3) require any Plaintiffs' reply to the PI Opposition to be filed by September 8, 2026.

Dated: August 27, 2026 Respectfully submitted,

---

[2] Plaintiffs' extension-of-time request (for its PI reply) was made as the last sentence of the Strike Motion, basically as an undeveloped "in the alternative" afterthought.

*/s/ John M. Skeriotis*
John M. Skeriotis (Ohio Bar #0069263)
jms@etblaw.com
Sergey Vernyuk (Ohio Bar #0089101)
sv@etblaw.com
1914 Akron-Peninsula Rd.
Akron, Ohio 44313
(330) 434-9999 – Telephone
(330) 434-8888 – Facsimile
*Attorneys for Defendants 80Mills LLC, Pearson Gardner, DNT LLC, Zach Morrow, Hanes Tactical LLC, Damion Terrell Bennett, Harrison Gunworks LLC, Tyler Harrison, Steven Thanh Nguyen d/b/a Polymer Pew, and Z3 Productions LLC*