[redacted]

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM**<br>**MDL 3176** |
| ABC IP, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HARRISON GUNWORKS LLC, *et al.*,<br><br>Defendants. | Civil Action No. 4:26-cv-00379-ALM |

[redacted]

**DECLARATION OF TYLER HARRISON IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' CONSOLIDATED MOTION FOR PRELIMINARY INJUNCTION**

I, Tyler Harrison, declare as follows:

1. My name is Tyler Harrison. I am the sole member and manager of Harrison Gunworks LLC ("Harrison Gunworks"). I submit this declaration in support of Defendants' Opposition to Plaintiffs' Consolidated Motion for Preliminary Injunction. I have personal knowledge of the facts stated in this declaration and, if called as a witness, could and would testify competently to them.

2. Harrison Gunworks is an Idaho limited liability company formed in 2024. I am its sole member and manager, and Harrison Gunworks operates from Pocatello, Idaho.

3. Harrison Gunworks is, in substance, a one-person operation. I personally perform substantially all of the business's functions, including product sourcing and preparation, listings,

order fulfillment, customer service, and recordkeeping. Harrison Gunworks has no employees other than me.

4. Harrison Gunworks sells Super Safety products and kits, the Defender cassette-style forced reset trigger, and the MARC Selector under its own brand.

5. Except for the Defender, the products are modular: the kits supply certain components (such as the cam, lever, and a pre-cut trigger), and the customer supplies or reuses the remaining standard fire-control parts and performs the installation. The MARC Selector does not include the trigger or other fire-control components.

6. Based on my experience selling to customers of forced reset trigger ("FRT") products, customers commonly switch between FRT products for many reasons, including product failures; preferences in trigger feel, shape, and look; functionality differences; curiosity; and spur-of-the-moment purchasing. The firearms-accessories market has many customers with varied and changing preferences, wants, and needs, and customers sometimes change out a product merely out of curiosity or to try something new.

7. Switching costs for users are insignificant. A customer who installs one FRT product is not wedded to that platform or style; the customer can readily remove it and install a different product, reusing standard fire-control components.

8. Harrison Gunworks' customers are generally do-it-yourself ("DIY") firearm enthusiasts and hobbyists who affirmatively want lower-priced, modular components that they can install, uninstall, reinstall, service, and combine with other parts of their choosing, including third-party triggers.

9. In my experience, Harrison Gunworks' customers understand that its prices are lower than Rare Breed's prices in significant part because the products are modular and install-it-

yourself: the customer supplies or reuses several standard fire-control components and performs the installation, rather than buying a complete, closed drop-in assembly at a premium price.

10. The modularity is itself a selling point. Customers can later switch or upgrade trigger assemblies—for example, to a higher-end trigger or simply a different style of trigger—without replacing an entire drop-in unit. In my experience, this is a strong selling point and an advantage over Rare Breed's closed, drop-in products.

11. Repeat purchasing is common. Customers purchase additional or different FRT products for additional rifles, purchase replacement or upgrade components, and try different products over time.

12. I have seen a growing number of customers who want two-stage triggers, or who at least want the option to install one. The modular products Harrison Gunworks sells are compatible with two-stage triggers. I understand that Rare Breed's single-stage FRT-15L3 does not offer that option.

13. The Super Safety replaces the rifle's standard safety selector with a push-button cam—a visibly and functionally different user interface from a standard selector and from Rare Breed's drop-in units. In my experience, a reasonably knowledgeable customer recognizes this difference when making the purchasing decision, and the difference is immediately apparent once the product is installed, so the customer would not be confused about whose product is installed. The selector-style products Harrison Gunworks sells (such as the ARC-Fire and MARC Selector) use ambidextrous selector-style switches and modular components that likewise look, install, and operate differently from Rare Breed's drop-in cassette assemblies.

14. Harrison Gunworks has never sold any products to East Valley Tactical.

15. Harrison Gunworks continues to sell its products in the ordinary course of business.

16. Harrison Gunworks has not asked or required any dealer or customer to make product-specific investments in training, compliance processes, or inventory, and I am not aware of any dealer or customer that has declined to purchase or carry Rare Breed products because of Harrison Gunworks.

17. I have invested substantial personal time and money in developing and commercializing Harrison Gunworks' products and business, including product development and testing, tooling and fixtures, manufacturing costs, inventory, website and marketing, and building its customer base.

18. Harrison Gunworks is a non-diversified business. The accused products and related or similar firearm mechanisms are the core of its operations and account for substantially all of its revenue. Harrison Gunworks has no other product line that could meaningfully replace those sales.

19. The investments described above are largely sunk. They could not be recovered if Harrison Gunworks were enjoined, and the inventory Harrison Gunworks holds would be stranded.

20. Harrison Gunworks' total revenue from the accused product categories over the trailing twelve months is [redacted]. Based on my knowledge of Harrison Gunworks' finances, Harrison Gunworks could pay a judgment based on a reasonable royalty in the range of 5% to 8% of its accused sales.

21. Because Harrison Gunworks is a one-person business, the requested preliminary injunction would not merely restrict a product line—it would effectively shut down the business and eliminate my livelihood. It would strand inventory, destroy the goodwill and customer relationships I have built, disrupt Harrison Gunworks's suppliers, and destroy the value of my sunk investments—all before any determination on the merits of Plaintiffs' claims, which Harrison Gunworks disputes.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 12 Aug 2026, 2026.

Tyler Harrison